UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL H., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 22-cv-1573-DDL <br><br> **ORDER ON PLAINTIFF'S MOTION FOR JUDICIAL REVIEW** <br><br> **[Dkt. No. 14]** |

On October 13, 2022, Plaintiff Daniel H. ("Plaintiff" or "claimant") filed a complaint challenging Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Commissioner") denial of his application for disability benefits. Dkt. No. 1. Before the Court are Plaintiff's motion to reverse and remand ("Motion") and the Commissioner's opposition thereto ("Opposition"). Dkt. Nos. 14, 16. After carefully considering the parties' briefing, the certified administrative record ("AR") and the applicable law, the Court concludes that the Commissioner's determination is free of legal error and supported by substantial evidence. For the reasons explained further below, the Court **AFFIRMS** the Commissioner's decision and **DENIES** Plaintiff's Motion.

///

///

///

# I.

# BACKGROUND

### A. Plaintiff's Application for Disability Benefits

Plaintiff is a 57-year-old male who alleges disability beginning on December 12, 2019, due to anxiety, bipolar disorder, hypertension, and cholesterol. AR 85-86, 251.[1] On September 22, 2020, Plaintiff filed an application for Supplemental Security Income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. *Id*. at 238-50. On September 25, 2020, Plaintiff also applied for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401-433. *Id*. at 251-54. Plaintiff's applications were initially denied on December 29, 2020, and again upon reconsideration on April 20, 2021. *Id*. at 155-62, 169-71.

Per Plaintiff's request, the Administrative Law Judge ("ALJ") held a telephonic hearing on October 5, 2021. AR 195. On October 26, 2021, the ALJ issued a written decision denying Plaintiff's claims, and the decision became final when the Appeals Council denied Plaintiff's request for review on September 14, 2022. *Id*. at 1-8, 17-36. *See* 42 U.S.C. § 405(h). This action followed.

### B. Summary of ALJ's Findings

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4).[2] AR 23-32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. *Id*. at 26.

---

[1] The Court adopts the parties' pagination of the AR. All other record citations are to the page numbers generated by the Court's CM/ECF system.

[2] First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ must determine whether the claimant suffers from a "severe" impairment within the meaning of the regulations. *Id*. § 404.1520(a)(4)(ii). Third, if the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the

At step two, the ALJ found Plaintiff had the following severe impairments which significantly limited Plaintiff's ability to perform basic work activities: depression, bipolar disorder, and anxiety.  AR 26.  The ALJ also found Plaintiff's hypertension and hypercholesterolemia were not severe so as to significantly limit Plaintiff's ability to perform basic work activities.  *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of those included in the Commissioner's Listing of Impairments.  AR 26-28.  The ALJ determined that Plaintiff had a mild limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting and managing oneself.  *Id*. at 27.  Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation in these areas, the "paragraph B" criteria of listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) were not satisfied.  *Id*.

The ALJ further determined that the evidence failed to satisfy the "paragraph C" criteria for these listings because the record did not reflect that Plaintiff "had only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life."  AR 27.  Additionally, the ALJ noted "there was insufficient evidence to establish that the claimant's mental disorder(s) were 'serious and persistent.'"  *Id*.  As the ALJ explained, the evidence

---

impairments identified in the regulations' Listing of Impairments.  *Id*. § 404.1520(a)(4)(iii).  Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work.  *Id*. § 404.1520(a)(4)(iv).  Fifth, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id*. § 404.1520(a)(4)(v).

specifically failed to show that "despite the claimant's diminished symptoms and signs, the claimant achieved only marginal adjustment," and it also failed to show "that changes or increased demands have led to exacerbation of the claimant's symptoms and signs and to deterioration in the claimant's functioning." *Id*.

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels, subject only to certain nonexertional limitations concerning Plaintiff's workplace activities and interactions with supervisors, coworkers, and members of the public. *See* AR 28-30. In so doing, the ALJ found unpersuasive the opinion of Plaintiff's treating psychiatrist, Belen Davila, M.D., that the severity of Plaintiff's alleged symptoms and mental functional limitations rendered him unable to work. *Id.* at 29-30. First, the ALJ considered Plaintiff's subjective testimony that he suffered from "bipolar disorder, depression, and anxiety," and that he "stay[ed] in bed and cr[ied] a lot." *Id*. at 28. The ALJ also considered that Plaintiff "stated his wife gave him his medications because he forgot to take them but denied medication noncompliance." *Id*. The ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," his statements regarding the limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id*. Specifically, "[t]he medical records revealed a history of mental health treatment beginning prior to the alleged disability onset date," as well as a history of contrasting effects when Plaintiff was compliant or noncompliant with medications. *Id*. The ALJ also noted Plaintiff's overall mental status examinations were "normal" except when he was noncompliant with medications. *Id*.

Second, the ALJ considered the prior administrative medical findings of state agency psychological consultants Kim Morris, Psy.D. and Ben G. Kessler, Psy.D., who each determined that Plaintiff had "mild limitations in understanding, remembering, or applying information and moderate limitations interacting with others, concentrating/persisting/maintaining pace, and adapting or managing himself." AR 29; *see generally* AR 85-118, 121-154. Dr. Morris and Dr. Kessler opined on initial review and

on reconsideration, respectively, that "the claimant could understand, remember, and carry out simple instructions and tasks; respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others was casual and infrequent; could perform work at a normal pace without production quotas; and could not work in a setting which included constant/regular contact with the general public or more than infrequent handling of customer complaints." AR 29. The ALJ found their assessments to be "persuasive" because they "were based on the objective medical evidence they reviewed in the file" and "were consistent with the evidence from other medical sources." *Id*. The ALJ went on to explain that "evidence from other medical sources" referred to Dr. Davila's "routinely noted normal mental status examinations through [her] treatment history with the claimant." *Id*. at 29-30.

At step four, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work as a plasterer. AR 30. The vocational expert testified that plasterer work is a medium, skilled occupation that Plaintiff allegedly performed as heavy work. *Id*. Although Plaintiff's work as a plasterer qualified as substantial gainful activity, was performed long enough for Plaintiff to achieve average performance, and was performed within the relevant period, the ALJ relied on the vocational expert's indication that "this job required the performance of duties precluded by the maximum [RFC] adopted herein." *Id*. Therefore, the ALJ concluded Plaintiff was unable to perform past relevant work. *Id*.

At step five, the ALJ accepted the vocational expert's testimony that an individual of Plaintiff's age, education, work experience, and RFC could perform the requirements of occupations that exist in significant numbers in the national economy. AR 31-32. The ALJ noted that Plaintiff was 53 years old at the time of the decision and had a "limited education." *Id*. at 31. Pursuant to the framework set forth in section 204.00 of the Medical-Vocational Guidelines, which applies to claimants who have solely nonexertional limitations, the ALJ heard testimony from the vocational expert regarding the range of jobs available in the national economy that a person of Plaintiff's age, education, work experience, and RFC could perform. *Id*.; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2.

Specifically, the vocational expert testified that such available occupations include a cleaner, kitchen helper, and hand packager. AR 31. Given the availability of jobs that Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled and therefore denied the requested benefits. *Id*. at 32.

## II.
## ISSUE PRESENTED

The issue is whether substantial evidence supports the ALJ's finding that Dr. Davila's opinion was unpersuasive.[3]

## III.
## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).[4] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id*. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id*.

This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id*. at 1115-16. However, the Court

---

[3] Plaintiff frames the issue as being "[w]hether the ALJ properly rejected the opinion of the treating psychiatrist in lieu of the opinions of reviewing doctors." Dkt. No. 14 at 4. However, this framing is based on an outdated legal standard, as discussed further herein.

[4] All citations, internal quotation marks, and subsequent history are omitted unless otherwise noted.

cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning that "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

## IV.

## DISCUSSION

### A.  The ALJ's Decision is Free of Legal Error

Plaintiff contends the ALJ "improperly rejected the well supported opinion of Plaintiff's long time treating specialist, in favor of the opinions of two reviewing doctors," and "[t]o reject Dr. Davila's opinion in favor of the opinions of these two reviewing doctors is legal error." Dkt. No. 14 at 4, 7. The Court disagrees.

Until 2017, the "treating physician rule" required the ALJ to give greater weight to the opinion of a claimant's treating physician than to the opinion of a doctor who does not treat the claimant. *See, e.g.*, *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, in 2017, the Social Security Administration abrogated the treating physician rule. *See Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). For claims filed after March 27, 2017—including Plaintiff's—the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each opinion in relationship to the record. *See* 20 C.F.R. § 404.1527(b) (explaining that "[i]n determining whether [a claimant is] disabled, [the Administration] will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [it] receive[s]"). The "most important factors" the ALJ must consider in doing so are "supportability" (i.e., whether the provider supported his or her opinion with citations to objective findings) and "consistency" (i.e.,

whether the opinion is consistent with other evidence in the record). 20 C.F.R. § 404.1520c(a); *see id.* § 404.1520c(c)(1) and (2) (defining "supportability" and "consistency"). With these considerations in mind, the Court turns to the ALJ's evaluation of the opinions and findings in the record.

**B.     The ALJ's Decision is Supported by Substantial Evidence**

The ALJ found that "the medical opinions of Dr. Davila [were] unpersuasive because they were not supported by objective evidence, were inconsistent with [her] own treatment records, and failed to specify the basis of [her] speculation as to the anticipated number of days the claimant would miss per month if he returned to work in the future." AR 30.  Substantial evidence supports this finding.

First, the ALJ observed that "[a] review of Dr. Davila's mental health treatment reflected fairly normal mental status examinations throughout the claimant's treatment history."  AR 30.  In assessing Plaintiff's RFC, the ALJ noted that "[o]verall, the mental status examinations were normal except for the occasional constricted and dysphoric affect when he was noncompliant with Lamictal." *Id.* at 29.  In support of this determination, the ALJ cited to Dr. Davila's progress notes dated June 21, 2019; November 12, 2019; February 14, 2020; and July 13, 2021. *Id.* at 29; *see id.* at 406, 408, 412, 466.  In the mental status section of each of these progress notes, Dr. Davila characterized Plaintiff's functioning as "normal" in the categories of memory, concentration and attention, behavior, speech, mood, and thought process. *See* AR 406, 408, 412, 466.

The ALJ then compared these progress notes between June 2019 and July 2021, which indicate a pattern of Plaintiff's "normal" mental status, to Dr. Davila's August 2021 and September 2021 assessments of Plaintiff's mental functional limitations:

> On August 2, 2021, Dr. Davila filled out a check box-type form indicating that the claimant had mostly marked mental functional limitations and some moderate mental functional limitations, would be off task 30 to 40% of the workday, and would be absent four to six days a month.  [She] expressed even greater functional limitations on September 7, 2021, indicating that the claimant

>would be off task 75 to 80% of the workday and be absent seven to ten days per month.

AR 29-30. The ALJ further observed that "Dr. Davila did not cite to specific objective findings to support an increase of functional limitations as of September 2021." *Id*. at 30.

Substantial evidence supports the ALJ's finding that Dr. Davila's medical opinions were unpersuasive. First, Dr. Davila's prior examination notes regarding Plaintiff's normal mental status—including her notes from a July 13, 2021, examination—are not consistent with her opinions in the August 2021 and September 2021 check box forms that Plaintiff has moderate and marked limitations that would result in him being off task or absent from work a significant portion of the time.

Additionally, the ALJ considered each of Dr. Davila's opinions regarding the proportion of time Plaintiff would be off task or absent from work. The ALJ first considered the August 2021 form, in which Dr. Davila wrote:

>Patient experiences drastic changes in his mood, noticeable to those around him. Such episodes last several days up to one week at times and are associated with distractibility, cognitive dysfunction, sleep disturbances, high energy levels, severe anxiety, psychomotor agitation. Such symptoms impair his ability to relate well with others, complete, tasks, and function in work setting. In addition, patient has a long history of affective instability, limited distress tolerance, poor impulse control and poor structure at home.

AR 490-91. The ALJ then considered the September 2021 form, in which Dr. Davila wrote:

>Patient experiences drastic changes in mood. Mood changes are also associated with sleep disturbances, cognitive dysfunction, energy fluctuations, severe anxiety, distractibility. Such episodes last several days up to one week; at times multiple episodes per month.
>
>In addition, patient often depends on others to keep his life in order, often has trouble paying attention to others even when

> being spoken directly to, often procrastinates, often has difficulty remembering appointments and obligations, requiring reminders and redirection; often has trouble waiting his turn and often restless and fidgety.
>
> Patient has a long history of emotional dysregulation, limited distress tolerance, poor impulse control.
>
> Symptoms mentioned above impair him socially, vocationally and completing [activities of daily living].

*Id*. at 492-95.  As the ALJ concluded, Dr. Davila's notes do not include citations "to objective findings to support an increase of functional limitations as of September 2021." *Id*. at 30.  This evidence supports the ALJ's conclusion that Dr. Davila's opinions are unpersuasive.

Finally, the ALJ found Dr. Davila's opinions unpersuasive because she "ignored evidence of [Plaintiff's medication] noncompliance," and her own progress notes reflected "improvement of the claimant's condition in August of 2020."  AR 30 (citing AR 402). The ALJ summarized evidence of Plaintiff's noncompliance, as follows:

> When compliant with medications, the claimant was "doing pretty good" and when noncompliant the claimant admitted to increased exacerbation of mental symptoms, including mood lability, crying spells, fluctuations in energy, sleep, and cognition. . . .  It was also notable that the claimant reported gradual mental improvement since increasing the dose of Lamictal.

*Id*. at 29 (citing AR 410, 472).  The ALJ cited to Dr. Davila's progress notes, which contain the following comments: "[G]radual improvements since increasing dose of Lamictal," (AR 402); "Adequate response with current medication regimen in the context of compliance. Admits to noncompliance with Lamictal about 1.5-2 months ago for several weeks. Since this, notes exacerbation of symptoms including mood lability, crying spells, fluctuation in activity, energy and sleep and cognition," (AR 410); and "States he is doing pretty good, compliant with medications, occasionally misses a dose. . . . States overall he

feels stable," (AR 472). Accordingly, substantial evidence supports the ALJ's observation that, while Dr. Davila's progress notes reflect Plaintiff's history of noncompliance with medications and the effects associated with Plaintiff's compliance or noncompliance, her opinion regarding Plaintiff's functional limitations fails to take this information into consideration.

Plaintiff complains the ALJ "never even mentioned Dr. Davila's opinion in her responses to a California Department of Social Services form (AR 460)." Dkt. No. 14 at 4. The California Department of Social Services ("CDSS") forms, which Dr. Davila completed on July 17, 2020, and on September 29, 2020, contain broad descriptions of the severity and purported causes of Plaintiff's impairments in the areas of Present Daily Activities, Social Functioning, Task Completion, and Adaptation to Work or Work-like Situations. *See* AR 460, 464. Plaintiff further relies on Dr. Davila's comments in the July 17 CDSS form to support his contention that "the ALJ's rejection on the basis [Dr. Davila] 'failed to specify the basis for her speculation' regarding the impact of Plaintiff's mental impairment on his work capacity is untrue." Dkt. No. 14 at 6. Plaintiff states that "Dr. Davila specifically hand writes that Plaintiff's adaptation to work or work-like situations is 'Severely impaired due to forgetfulness, distractibility, inflexible ways and irritability' (AR 460)." *Id.* at 7.

The Court disagrees with Plaintiff's contentions. First, "[w]here a single doctor provides multiple medical opinions, the regulations contemplate that the ALJ will perform just one analysis of that source's opinions and not articulate how [the ALJ] considered each medical opinion ... from one medical source individually." *Rafael G. v. Kijakazi*, No. 21cv522-MMA (MSB), 2022 WL 3019935, at *4 (S.D. Cal. July 29, 2022) (citing 20 C.F.R. § 404.1520c(b)(1)) (internal quotation marks omitted). Thus, the applicable regulations only require the ALJ to analyze Dr. Davila's medical opinions *collectively* in a single analysis. Second, even if the ALJ did err by failing to address Dr. Davila's comments in the CDSS forms, the error would be harmless because, as previously discussed, substantial evidence in the record supports the ALJ's ultimate decision. *See*

11

*Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" (citation omitted)), *superseded on other grounds by* 20 C.F.R. § 404.1520a.

Finally, the ALJ concluded Dr. Davila's opinion that Plaintiff was unable to work was "inherently unpersuasive" because "[t]he determination of disability is reserved to the Commissioner." AR 29. "An ALJ need not analyze non-medical opinions on issues reserved to the Commissioner because they are 'inherently neither valuable nor persuasive.' (Citation omitted). '[T]he opinion that [the plaintiff] is unable to work is not a medical opinion, but is an opinion about an issue reserved for the Commissioner.'" *Susan F. v. Kijakazi*, No. 20-cv-2201-BAS-DEB, 2022 WL 1694460, at *4 (S.D. Cal. May 26, 2022) (quoting *Martinez v. Astrue*, 261 F. App'x. 33, 35 (9th Cir. 2007)); 20 C.F.R. § 404.1520b(c)(3)(i). Thus, the ALJ properly concluded Dr. Davila's opinion regarding Plaintiff's capacity to work was "unpersuasive." AR 29.

For the foregoing reasons, substantial evidence in the record supports the ALJ's conclusion that Dr. Davila's medical and non-medical opinions were unpersuasive.

## V.

## CONCLUSION

The Court concludes that the ALJ's decision is free of legal error and is supported by substantial evidence. Plaintiff's Motion for reversal and remand for payment, or alternatively, to remand for further proceedings, is **DENIED**. The Court hereby **AFFIRMS** the final decision of the Commissioner of Social Security. The Clerk of Court is respectfully requested to enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: December 18, 2023

Hon. David D. Leshner
United States Magistrate Judge